STATE OF NORTH CAROLINA, EX REL UTILITIES COMMISSION, AND DUKE POWER COMPANY v. UNION ELECTRIC MEMBERSHIP CORPORATION

No. 6810UC395

(Filed 31 December 1968)

1. Electricity § 2—  consumer's choice of supplier
    Upon request of a consumer, an electric supplier may provide electric service to such consumer on premises initially requiring electric service after 20 April 1965 if such premises are located outside of a municipality, are not located wholly within 300 feet of the lines of any electric supplier, are not located partially within 300 feet of the lines of two or more electric suppliers, and are not located wholly or partially within an area assigned to an electric supplier pursuant to subsection (c) of G.S. 62-110.2. G.S. 62-110.2(b)(5).

2. Electricity § 2;   Utilities Commission § 4—  assignment of rural territory — authority of the Commission
    The purposes of Chapter 287, Session Laws of 1965, are (1) to vest the Utilities Commission with authority and responsibility to assign territory to electric suppliers and (2) to declare certain rights of electric suppliers in areas outside of municipalities pending the assignment of territory. G.S. 62-110.2(c)(1), G.S. 62-110.2(b).

3. Electricity § 2;   Utilities Commission § 4—  jurisdiction of Commission where consumer has right to choose supplier
    G.S. 62-110.2(b)(5) applies in factual situation where consumer of electricity requests electric services for premises initially requiring such ser-

vices after 20 April 1965 and premises are located outside of a municipality, are not wholly within 300 feet of the lines of any electric supplier, are not located partially within 300 feet of the lines of two or more suppliers, and are not located wholly or partially within an area assigned to an electric supplier pursuant to G.S. 62-110.2(c) ; other provisions of G.S. Ch. 62 deal with general powers and responsibilities of the Utilities Commission and are not applicable to give the Commission authority, in factual situation clearly within the provisions of G.S. 62-110.2(b) (5), to make a determination that the choice of supplier would cause an unnecessary duplication of electric facilities.

**4. Statutes § 5— statutory construction — particular v. general provisions**

Where there are two provisions in a statute, one of which is special or particular and the other general, which, if standing alone, would conflict with the particular provision, the special will be taken as intended to constitute an exception to the general provision, as the General Assembly is not to be presumed to have intended a conflict.

**5. Statutes § 5— statutory construction — particular v. general statutes**

Where one statute deals with the subject matter in detail with reference to a particular situation and another statute deals with the same subject matter in general and comprehensive terms, the particular statute will be construed as controlling in the particular situation unless it clearly appears that the General Assembly intended to make the general act controlling, especially when the particular statute is later enacted.

**6. Statutes § 5— statutory construction**

If the words of the law are clear and precise and the true meaning evident on the face of the enactment, there is no room for construction.

**7. Utilities Commission § 4— right of electric supplier to deny service**

Conclusion of the Utilities Commission that a consumer has the unrestricted choice of electric supplier under G.S. 62-110.2(b) *is held* subject to the right of the chosen electric supplier to deny the service unless required by the Utilities Commission.

BROCK, J., dissenting.

APPEAL by Union Electric Membership Corporation from Utilities Commission order of 8 May 1968.

The facts pertinent to this appeal are not in substantial dispute. Union Electric Membership Corporation (Union) is a duly organized, nonprofit electric membership corporation which is both a wholesale customer and retail competitor of Duke Power Company (Duke), a duly organized corporation and public utility.

Both Union and Duke are electric suppliers as defined in G.S.

62-110.2(a)(3). No service areas have been assigned in Union County as between the two pursuant to G.S. 62-110.2.

In 1966, William L. Carter acquired a tract of land fronting on the west side of Griffith Road (S. R. 2139) in Union County about two miles south of the corporate limits of Monroe and about 2,000 feet south of Richardson Creek. Since 1939 and until the construction complained of, Union's facilities have been located on and along Griffith Road south of Richardson Creek, and Duke's facilities were on and along the same road north of Richardson Creek. At the time Carter purchased the aforesaid tract and continuing to the present, Union's distribution line ran in a north-south direction along the eastern edge of Griffith Road opposite the road frontage of the tract. Union also had a line generally parallel to the tract's southern boundary line for a distance of about 250 feet, averaging approximately 150 feet from said boundary line. There was no service on the tract itself when purchased. At the time of purchase, Union served a house on the property adjoining the tract on the south and a house on the property adjoining the tract on the north. Duke's nearest facilities to the tract at purchase and until April 1967 were some 3,400 feet north, on the west side of Griffith Road.

Carter purchased the tract for residential development purposes and, in December 1966, began to clear and develop it, laying out and constructing an entry road in the approximate center of the tract and running generally east-west off of Griffith Road. The tract was subdivided into some thirty residential building lots.

In response to legitimate inducements offered by Duke generally, Carter requested Duke, about the first week of April 1967, to construct facilities to his subdivision and to serve a house which he had begun on the entry road some 600 feet west of Griffith Road and 352 feet from Union's line parallel to the subdivision's south property line. Pursuant to the request, Duke, on or about 7 April 1967, constructed its line from its existing facilities on Griffith Road north of Richardson Creek down and with Griffith Road south about 3,000 feet to the south property line of the subdivision, thence westerly 507 feet along the south edge of the subdivision to a dead end, thence northeast 300 feet to the aforesaid house under construction. All of Duke's construction on Griffith Road was placed on poles installed by a telephone company for its primary use with pole rental rights to Duke. Duke's line from Griffith Road into the subdivision was on its own poles. Duke's new construction on Griffith Road crossed over the road twice and crossed over Union's lines twice before reaching the subdivision. Duke's lines are directly parallel to Union's lines on the op-

posite side of Griffith Road for about 700 feet as it approaches and reaches the back property line of the subdivision. The line in the subdivision is directly parallel to Union's for about 225 feet at an average distance of approximately 125 feet. Since Duke's construction, Carter has started an additional house in the subdivision on Griffith Road. This house is 157 feet from Union's lines and about 80 feet from Duke's new line. Union provides construction power to this house and the parties' lines also cross each other at this point on Griffith Road.

Union filed complaint with the Utilities Commission asking that it issue orders restraining Duke from further construction of facilities in the area west of Richardson Creek and from furnishing any service whatever from the facilities already constructed; also requiring Duke to take down and remove the facilities constructed by it in the area.

The Utilities Commission ruled that the facts of this case bring it within the provisions of G.S. 62-110.2(b)(5) and dismissed Union's complaint. Union appealed.

*Edward B. Hipp and Larry G. Ford for North Carolina Utilities Commission.*

*William I. Ward, Jr., and George W. Ferguson, Jr., for plaintiff appellee, Duke Power Company.*

*Crisp, Twiggs & Wells by William T. Crisp and Hugh A. Wells and Clark & Huffman by Richard S. Clark for defendant appellant, Union Electric Membership Corporation.*

BRITT, J.

The majority order adopted by the Utilities Commission was based upon the premise that the provisions of G.S. 62-110.2(b)(5) are applicable to the factual situation covered by this case. Said section reads as follows:

"(b)   In areas outside of municipalities, electric suppliers shall have rights and be subject to restrictions as follows:

*         *         *

(5)   Any premises initially requiring electric service after April 20, 1965 which are not located wholly within 300 feet of the lines of any electric supplier and are not located partially within 300 feet of the lines of two or more electric suppliers may be served by any electric supplier which the consumer chooses, unless such

premises are located wholly or partially within an area assigned to an electric supplier pursuant to subsection (c) hereof, and any electric supplier not so chosen by the consumer shall not thereafter furnish service to such premises."

[1]     Duke contends, and the Utilities Commission concluded, that the facts of this case fall squarely within the quoted statute. The question presented can be stated as follows: May an electric supplier, upon a request of a consumer, provide electric service to such consumer on premises initially requiring electric service after 20 April 1965, if such premises are located outside of a municipality, are not located wholly within 300 feet of the lines of any electric supplier, are not located partially within 300 feet of the lines of two or more electric suppliers, and are not located wholly or partially within an area assigned to an electric supplier pursuant to subsection (c) of G.S. 62-110.2? We answer the question in the affirmative.

[2]     Determination of this appeal necessitates a consideration of Chapter 287 of the 1965 Session Laws codified as G.S. 62-110.1, *et seq.* Clearly, one of the purposes of Chapter 287 is to vest the Utilities Commission with authority and responsibility to assign territory to electric suppliers; this purpose is set forth in G.S. 62-110.2(c)(1) as follows:

"(c)     (1)     In order to avoid unnecessary duplication of electric facilities, the Commission is authorized and directed to assign, as soon as practicable after January 1, 1966, to electric suppliers all areas, by adequately defined boundaries, that are outside the corporate limits of municipalities and that are more than 300 feet from the lines of all electric suppliers as such lines exist on the dates of the assignments; provided, that the Commission may leave unassigned any area in which the Commission, in its discretion, determines that the existing lines of two or more electric suppliers are in such close proximity that no substantial avoidance of duplication of facilities would be accomplished by assignment of such area. The Commission shall make assignments of areas in accordance with public convenience and necessity, considering, among other things, the location of existing lines and facilities of electric suppliers and the adequacy and dependability of the service of electric suppliers, but not considering rate differentials among electric suppliers."

[2]     It is equally clear that another purpose of Chapter 287 of the 1965 Session Laws, and particularly the section codified as G.S. 62-110.2(b), is to declare certain rights of electric suppliers in areas outside of municipalities pending the assignment of territory. Thus,

in the action before us, we must consider certain rights given an electric supplier and a consumer by the General Assembly.

**[3]**    Appellant contends that a determination of this appeal does not rest entirely upon the consideration of the provisions of G.S. 62-110.2 but also upon certain other provisions of Chapter 62 of the General Statutes, particularly G.S. 62-2, 62-30, 62-31, 62-32, 62-42, and 62-73. Appellant contends that G.S. 62-110.2 must be considered and construed in *pari materia* with said other sections of Chapter 62.

**[4]**    Our Supreme Court has spoken many times on the question of interpretation of statutes. "Where there are two provisions in a statute, one of which is special or particular and the other general, which, if standing alone, would conflict with the particular provision, the special will be taken as intended to constitute an exception to the general provisions, as the General Assembly is not to be presumed to have intended a conflict." *Davis v. Granite Corporation,* 259 N.C. 672, 131 S.E. 2d 335; 7 Strong, N. C. Index 2d, Statutes, § 5, p. 73.

**[5]**    It is also a rule of statutory construction that "[w]here one statute deals with the subject matter in detail with reference to a particular situation and another statute deals with the same subject matter in general and comprehensive terms, the particular statute will be construed as controlling in the particular situation unless it clearly appears that the General Assembly intended to make the general act controlling in regard thereto, especially when the particular statute is later enacted." 7 Strong, N. C. Index 2d, Statutes, § 5, p. 73.

**[6]**    In *Watson Industries v. Shaw, Comr. of Revenue,* 235 N.C. 203, 69 S.E. 2d 505, Barnhill, J. (later C.J.), said: "If the words of the law are clear and precise, and the true meaning evident on the face of the enactment, there is no room for construction." In *Highway Commission v. Hemphill,* 269 N.C. 535, 153 S.E. 2d 22, our Supreme Court through Branch, J., declared: " 'When the language of a statute is plain and free from ambiguity, expressing a single, definite and sensible meaning, that meaning is conclusively presumed to be the meaning which the Legislature intended, and the statute must be interpreted accordingly.' *Long v. Smitherman,* 251 N.C. 682, 111 S.E. 2d 834."

**[3]**    G.S. 62-110.2(b)(5) deals with the specific factual situation presented by this appeal. The other sections of Chapter 62 referred to by Union deal with general powers and responsibilities of the Utilities Commission.

In *Membership Corp. v. Light Co.,* 255 N.C. 258, 120 S.E. 2d 749, our Supreme Court, in an opinion written by Bobbitt, J., declared:

"In *Light Co. v. Electric Membership Corp.*, 211 N.C. 717, 192 S.E. 105, decided in 1937, this Court held that an electric membership corporation and a public utility corporation were free to compete in rural areas. Unless restricted by the provisions of Article 8 of their contract of January 5, 1956, plaintiff and defendant may continue to do so."

Finding of fact No. 16 of the Utilities Commission order, which was not excepted to by Union, states:

"16.   Prior to March 12, 1965, complainant and defendant had a contract between them which provided, inter alia, 'nor shall either party, unless ordered to do so by a properly constituted authority, duplicate the other's facilities.' On March 12, 1965, counsel for all of the electric membership corporations in the State and all electric public utilities entered into an agreement that their territorial relationships would be governed by G.S. 62-110.2 rather than by the provisions of any contracts as herein referred to."

Inasmuch as the contract existing between Union and Duke prior to 12 March 1965 was terminated and they, along with other electric membership corporations and electric public utilities in North Carolina, agreed that their territorial relationships would be governed by G.S. 62-110.2, the "freedom to compete in rural areas" declared in *Membership Corp. v. Light Co., supra,* would be applicable unless forbidden by some provision of G.S. 62-110.2. Subsection (b)(5) of G.S. 62-110.2 is clear and precise in declaring the rights of an electric supplier in the factual situation presented by this appeal.

[3]   As stated in the Commission order, to accept the argument of Union, the Commission or the court would, in effect, amend G.S. 62-110.2(b)(5) by adding a clause providing "unless the Utilities Commission shall find that the consumer's choice creates unreasonable duplication of facilities." We cannot accept this argument. In *Board of Architecture v. Lee,* 264 N.C. 602, 142 S.E. 2d 643, a case dealing with statutory construction, Parker, J. (now C.J.), speaking for our Supreme Court, said: "* * * The General Assembly having thus formally and clearly expressed its will, the Court is without power to interpolate or superimpose conditions and limitations which the statutory exception does not of itself contain. * * *"

Union insists that it is the duty and responsibility of the Utilities Commission to assert itself in the case at bar and similar instances in order to prevent the unnecessary, extravagant and wasteful duplication of electric facilities. We do not hold that the Utilities Commission lacks authority, in a proper proceeding, to prohibit the con-

struction by an electric power utility of a proposed extension or expansion of its facilities, if the Commission should determine on competent evidence that such construction would be an unnecessary and wasteful investment of the utility's funds. *Membership Corp. v. Light Co., supra.* We do hold that on the facts presented in the case before us, and in the face of the provisions of G.S. 62-110.2(b)(5), the Commission was justified in not taking such action in this case. The Commission found as a fact, and Union made no exception to the finding, that the construction in this case was at a cost of $2,335.00; that the cost to Union would have been $1,485.00; that "it would be profitable for either Duke or Union to provide service in the entire subdivision, particularly to the 29 homes which are to be all electric."

[7] The first paragraph of "Conclusions" in the Utilities Commission order reads as follows:

> "The facts found above would seem to present in the present case the following issue for decision by the Commission: 'Does a consumer, residing outside the boundary of a municipality and in an area not yet assigned to any electric supplier under G.S. 62-110.2(c), have the right to select and obtain electricity from the electric supplier of his choice when the structure to be served is not wholly within 300 feet of an existing line of any electric supplier?'"

Union excepted to, and assigns as error, this conclusion. We hold that the quoted conclusion is subject to the right of the electric supplier chosen to deny the service unless required by the Utilities Commission.

Union's exception No. 6 relates to the following conclusion of the Commission:

> "We feel that under the language of G.S. 62-110.2(b)(5), it is abundantly clear that the Legislature intended that, pending assignment of a rural area to any one electric supplier, a consumer requiring initial service to premises not within 300 feet of any existing supplier's lines has the *unrestricted* choice of suppliers and the chosen supplier has the *unrestricted* right to serve such consumer. Furthermore, as specifically stated in the final clause of the statute, 'any electric supplier not so chosen by the consumer shall not thereafter furnish service to such premises.'"

We hold that the "unrestricted choice of suppliers" on the part of the consumer is subject to the willingness of the chosen supplier to serve unless compelled by the Utilities Commission.

Except for the modification above-mentioned, we hold that the

final order of the Utilities Commission was without error and the assignments of error brought forward by appellant are overruled.

The Utilities Commission will modify its order in accordance with this opinion.

Modified and affirmed.

PARKER, J., concurs.

BROCK, J., dissents.

BROCK, J., dissenting:

I cannot agree with the majority opinion that by the enactment of G.S. 62-110.2(b)(5) the legislature intended to divest the Utilities Commission of power to inquire into the question of duplication of facilities which might be caused by a consumer's choice of an electric supplier where the conditions of the statute are otherwise met. And it seems to me that the majority opinion has conceded a right to the exercise of discretion under the statute by the supplier and the Utilities Commission with its statement as follows: "We hold that the 'unrestricted choice of supplier' on the part of the consumer is subject to the *willingness of the chosen supplier* to serve unless *compelled by the Utilities Commission.*" (Emphasis added.) Nevertheless the majority opinion affirms the dismissal of this proceeding by the Utilities Commission upon the grounds that G.S. 62-110.2(b)(5) deprives it of power to make and enforce a determination of whether the extension of Duke's lines in this case is reasonable, or whether it constitutes an unreasonable and wasteful duplication of facilities as alleged by Union Electric.

In my opinion the statute in question does not divest the Utilities Commission of the power and the duty to make and enforce a determination from the facts of the case whether the choice of supplier made by a consumer, otherwise qualified to make a choice under this statute, would cause an unwarranted duplication of facilities. It may be that the extension of its lines by Duke in this case is proper under the criteria permitting duplication, but the Utilities Commission should be required to make an appropriate determination.

I vote to remand for appropriate findings and conclusions.