HUGH A. WELLS AND WIFE ANNE WELLS, LAWRENCE W. HARRIS AND WIFE LUCILLE HARRIS, EUNICE B. EILERS, WILLIAM F. BEAL, JR. AND WIFE DORA BEAL, AND MRS. GEORGE B. COOPER, PETITIONERS v. C. L. BENSON, F. L. ROBUCK, JR., AND CEDAR HILLS DEVELOPMENT CORPORATION, D/B/A B & R ASSOCIATES; CAROLINA BUILDERS CORPORATION; AND THE NORTH CAROLINA ENVIRONMENTAL MANAGEMENT COMMISSION, RESPONDENTS

No. 7810SC447

(Filed 17 April 1979)

1. **Waters and Watercourses § 4— private dam—authority of Environmental Management Commission to order repair**

    The Dam Safety Law of 1967, G.S. 143-215.23 *et seq.*, did not authorize the Environmental Management Commission to require the owners of a private washed-out dam to repair rather than remove the dam when the condition of the dam was not such as to present a threat of physical damage to surrounding property owners.

2. **Waters and Watercourses § 4— notice of orders involving private dam**

    Petitioners who were not landowners whose property would be endangered by a failure of a private dam were not entitled to notice of actions and orders of the Environmental Management Commission with respect to the dam. G.S. 143-215.33(b).

APPEAL by respondents from *Smith (David I.), Judge.* Order entered 7 April 1978 in Superior Court, WAKE County. Heard in the Court of Appeals 9 February 1979.

On 31 January 1977, a dam owned by C. L. Benson, F. L. Robuck, Jr., Cedar Hills Development Corporation, d/b/a B & R Associates, and Carolina Builders Corporation suffered a washout. After preliminary discussion between representatives of the Department of Natural Resources and Community Development (hereinafter referred to as the Department) and the owners of the dam, the Director of the Division of Earth Resources (hereinafter referred to as the Director) of the Department issued Dam Safety Order No. 77-4 to the owners of the dam:

"Therefore, by the authority of NCGS 143-215.32(b) and 15 NCAC 2K. 0002, it is hereby ordered that:

1. B & R Associates and Carolina Builders Corp. make within 91 days of the issuance of this order, to wit May 30, 1977 the necessary maintenance, repair,

alteration, or reconstruction to this dam pursuant to engineering plans and specifications submitted to and approved by the Director, Division of Earth Resources,

*or*

2. B & R Associates and Carolina Builders Corp within 91 days of the issuance of this order, to wit May 30, 1977 breach this dam pursuant to engineering plans and specifications submitted to and approved by the Director, Division of Earth Resources, in such a manner that it can no longer impound water and in such a manner that will preclude the washing of sediment downstream.

Date: February 28, 1977.

> s / STEPHEN G. CONRA. .
> Stephen G. Conrad, Dire. . . . .
> Division of Earth Resou. . . ."

The above order was issued without notice to the petitioners, who are owners of property surrounding and submerged by the water of Cedar Hills Lake and downstream from the dam impounding the lake. The owners of the dam failed to submit the required plans by 30 May 1977, and as a result thereof, the Director notified the owners of the assessment of civil penalties on 12 September 1977. The owners of the dam, through counsel, requested remission of the civil penalties on 23 September 1977, and subsequently, a hearing was scheduled on the matter.

On 2 November 1977, the petitioners filed a motion to intervene and a petition for relief with the Environmental Management Commission (hereinafter referred to as the Commission) seeking to review the Director's order set out above. Petitioners sought to have the dam repaired and rebuilt, but not removed. At the scheduled hearing of the Commission on the owners' request for remission, the petitioners were denied an opportunity to argue their case to the Commission, and their motion to intervene was denied.

Petitioners then appealed to the Superior Court pursuant to the Administrative Procedure Act. G.S., Chap. 150A, Art. 4. The Commission filed a motion to dismiss the appeal on the ground that it had no authority to grant the petitioners the relief re-

quested by them. On 3 April 1978, petitioners filed a motion for partial summary judgment requesting the court to require the Commission to grant them a hearing so that a determination by the Commission could be made on the matter involved and to provide a basis for an appeal on the merits. On 7 April 1978, the Superior Court entered an order granting the petitioners partial summary judgment and ordering the Commission to grant a hearing to the petitioners according due process to all parties. The trial court held that the Commission had the right to require the owners of the dam to repair or reconstruct the defective dam without giving the owners the option to remove it. The Commission appealed.

*Attorney General Edmisten, by Special Deputy Attorney General W. A. Raney, Jr., for respondent appellant Environmental Management Commission.*

*Kimzey, Smith & McMillan, by James M. Kimzey, for petitioner appellees.*

ERWIN, Judge.

We hold that the trial court committed error by denying the Commission's motion to dismiss the petition on the grounds that the Commission is without authority to grant the relief requested by the petitioners. The judgment entered below is reversed.

The case *sub judice* will require us to review the Dam Safety Law of 1967 as amended in keeping with the prayer of relief as requested by the petitioners, to wit:

"Wherefore, Petitioners pray the Court that:

1. It issue its order requiring the Environmental Management Commission to permit the petitioners to intervene in this matter.

2. It require the Environmental Management Commission to hold a hearing where petitioners are accorded due process including the right to be heard, to examine and cross examine witnesses and to present evidence in their own behalf.

3. It issue a stay order, staying the Environmental Management Commission from carrying out the dictates of its

Dam Safety Order # 77-4 specifically in so far [sic] as said order permits the owners of the dam to breach the dam; and it issue an injunction requiring B & R Associates and Carolina Builders Corporation the owners of the dam to cease and desist from any breach of said removal of said dam or any other alteration of said dam to the detriment of petitioners until the final determination of this matter."

G.S. 143-215.24 declares the purpose of the Dam Safety Law as follows:

"It is the purpose of this Part to provide for the certification and inspection of dams in the interest of public health, safety, and welfare, in order to reduce the risk of failure of dams; to prevent injuries to persons, damage to property and loss of reservoir storage; and to ensure maintenance of minimum stream flows below such dams of adequate quantity and quality."

G.S. 143-215.32 grants the following authority to the Commission:

"(b) If the Department upon inspection finds that any dam is not sufficiently strong, or is not maintained in good repair or operating condition, or is dangerous to life or property, or does not satisfy minimum stream-flow requirements, the Department shall cause such evidence to be presented to the Commission and the Commission may issue an order directing the owner or owners of the dam to make at his or her expense maintenance, alterations, repairs, reconstruction, change in construction or location, or removal as may be deemed necessary by the Commission within a time limited by the order, not less than 90 days from the date of issuance of each order, except in the case of extreme danger to the safety of life or property, as provided by subsection (c) of this section.

(c) If at any time the condition of any dam becomes so dangerous to the safety of life or property, in the opinion of the Environmental Management Commission, as not to permit sufficient time for issuance of an order in the manner provided by subsection (b) of this section, the Environmental Management Commission may immediately take such meas-

ures as may be essential to provide emergency protection to life and property, including the lowering of the level of a reservoir by releasing water impounded or the destruction in whole or in part of the dam or reservoir. The Environmental Management Commission may recover the costs of such measures from the owner or owners by appropriate legal action."

Petitioner appellees contend that they are entitled to "a full and complete hearing pursuant to a holding by this Court that the Environmental Management Commission does have the authority AND THE RESPONSIBILITY to require the rebuilding of the dam if its removal would damage property and result in the loss of reservoir storage as Petitioners allege."

The intent of the Legislature controls the interpretation of the statute. *State v. Hart*, 287 N.C. 76, 213 S.E. 2d 291 (1975). If the language of the statute is clear and unambiguous, judicial construction is not necessary. Its plain and definite meaning controls. *Underwood v. Howland, Comr. of Motor Vehicles*, 274 N.C. 473, 164 S.E. 2d 2 (1968); *Davis v. Granite Corporation*, 259 N.C. 672, 131 S.E. 2d 335 (1963).

[1] The statutes before us are clear. The intent of the Legislature in enacting these statutes was to protect the citizens of this State from failures of dams; to prevent injuries to persons, damage to property, and loss of reservoir storage; and to ensure maintenance of minimum stream flow below such dams of adequate quantity and quality.

G.S. 143-215.33(b) provides:

"(b) If an applicant under this Part, or owner of a dam which is the subject of an application, or any landowner *whose property would be endangered by failure of a dam*, are dissatisfied with any final order or decision of the Environmental Management Commission issued under this Part, he (or they, as the case may be) shall have a right of appeal to the superior court pursuant to the provisions of Article 4 of Chapter 150A of the General Statutes." (Emphasis added.)

When viewed in context, it is clear that the evils which the act seeks to prevent are evils which ensue from dam failure. It is only in the event that the condition of the dam is such as to pre-

Wells v. Benson

sent a threat of *physical damage* to surrounding property owners that the Commission is empowered to require owners to repair the dam. *See* G.S. 143-215.32(b). Since this required condition is not present, we agree with the Commission that the act does not authorize the relief requested by plaintiffs.

We hold that: (1) G.S. 143-215.27, which deals with repair, alteration, or removal of a dam, contains a criterion for original construction only that the design is safe and adequate; (2) G.S. 143-215.27(b) provides for work to begin on repair, alteration, or removal when necessary to safeguard life and property; (3) G.S. 143-215.28(a) sets forth standards by which the Commission will approve or disapprove applications for construction, repair, alteration, or removal; and (4) G.S., Chap. 143, Art. 21, entitled Water and Air Resources, Part 3, Dam Safety Law, does not authorize the Commission to deny a removal of a private washed-out dam by the owners, unless the above criteria are met.

[2]   G.S. 143-215.33(b) designates the person or persons who shall have a right to appeal from the Commission to the Superior Court. To us, the statute designates the person who shall have notice of the Commission's actions and orders. Petitioners are not included within G.S. 143-215.33(b), in that they are not landowners whose property would be endangered by a failure of the dam. The dam in question here was washed out, and the owners of the dam have submitted to the Commission plans to breach the dam and drain the lake by their engineers. Even if the petitioners were entitled to notice, we hold that the relief sought by them is not authorized by the statutes in question.

The judgment appealed from is reversed and remanded. The trial court shall enter judgment dismissing appellees' petition.

Reversed and remanded.

Judges MARTIN (Robert M.) and MITCHELL concur.